# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 15 CR 542-1 |
| v. | ) | Judge Virginia M. Kendall |
| ERIC E. NEUSHWANDER, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Government moves to bar the testimony of Defense's proposed expert witness, James A. Hasier because his opinions are not relevant, improper under Fed. R. Evid. 702 and overly prejudicial pursuant to Fed. R. Evid. 403. (Dkt. 75). For the reasons stated below, the Government's Motion is granted. The case remains set for jury trial beginning on October 16, 2017 at 9:15 a.m.

## BACKGROUND

Defendant is charged with three counts of criminal bankruptcy fraud in relation to his actions and statements prior to, during, and after his filing for Chapter 7 bankruptcy in the Northern District of Illinois. Specifically, the Indictment alleges that from 2008 to 2010, Defendant's trucking and transportation company, A & K Transport, Inc. ("A & K Transport"), borrowed a total of $1.9 million from Wheatland Bank and its successor, Wheaton Bank & Trust Company ("Wheaton Bank"); Defendant and his wife (identified in the Indictment as Co-Schemer A) provided personal guarantees on the loans. In 2010, Defendant and his wife opened bank accounts in the name of A & K Transport and the then-newly-formed A & K Specialized Logistics at banks other than Wheaton Bank allegedly for the purpose of concealing the money and receipts of A & K Transport from its creditors. Defendant and his wife also incorporated

two Indiana companies (Mad-Car Transportation and MC Express) in order to transfer and conceal the assets of A & K Transport from its creditors.

By September 2, 2010, A & K Transportation was in default on its loans from Wheaton Bank and Wheaton Bank therefore filed suit in state court against A & K Transport, A & K Logistics, Defendant and his wife. On September 8, 2010, Defendant and his wife filed for bankruptcy, effectively staying the state court litigation. The Indictment alleges that Defendant and his wife made false representations in their bankruptcy court filings, such as their intentional failure to disclose their interests, employment, and involvement with Mad-Car Transportation and MC Express. The Indictment further alleges that after Defendant's bankruptcy filing, he continued the transfer of assets out of accounts held in the name of A & K Transport and into those in the name of MC Express. Finally, the Indictment alleges that Defendant and his wife made false statements under oath at a meeting of A & K Transport's creditors.

Accordingly, a grand jury charged Defendant with filing a bankruptcy petition for the purpose of executing and concealing a scheme to defraud in violation of 18 U.S.C. § 157(1) (Count I), making materially false and fraudulent representations concerning and in relation to a bankruptcy proceeding in violation of 18 U.S.C. § 157(3) (Count II), and fraudulently concealing from a trustee or other officers of the court charged with the control and custody of property and from creditors in a bankruptcy case in violation of 18 U.S.C. § 152(1) (Count III). (Dkt. 1).

In support of his defense, Defendant retained as an expert James Hasier, an attorney with experience representing financial institutions in a variety of matters, including bankruptcy proceedings and financial workouts. *See* (Dkt. 72-1 at 1). Hasier reviewed selected documents and rendered nine opinions, which are laid out in a four-page "Opinion Statement" which Defense counsel provided to the Government and this Court only after the Final Pretrial

Conference when this Court directed Defense counsel to do so. The expert notice was not given by the Court-ordered deadline for the filing of pretrial motions which passed weeks ago and was in violation of Fed. R. Crim Pro. 16(b)(C). The Court was only made aware of the proposed expert testimony when the Defense moved in limine to exclude any mention of the CJA payments made to Hasier by the government during cross examination. Expressing surprise that Hasier was testifying as an expert in the case that is set to begin in days, the Government informed the Court that no expert disclosure was made. The Court ordered that any disclosure must be made and that the Court would review both the timeliness and the relevance of the proffered opinion in her gate-keeping role under *Daubert*. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Defense counsel filed the proffered opinions and the Government objects,

<u>The Proposed Testimony</u>

Hasier reviewed the following documents: the Indictment (Dkt. 1) and other filings in the instant case; bankruptcy filings in and transcripts from *In re Eric Edward Neushwander*, No 10 BR 40224 (N.D. Ill. Bkr.); "materials turned over to Defense counsel by the Government"; the complaint in the state court action brought by Wheaton Bank against A&K Transport, A&K Specialized Logistics, and Defendant and Co-Schemer A; "corporate filings of the relevant corporations"; A&K Specialized Logistics' bank records; and "Banks collection efforts and recoveries." *Id*. Hasier was retained to render an opinion with respect to "the relevant Bankruptcy practices as they relate to the charges" against Defendant. *Id*.

Hasier asserts nine opinions based on his review of the records: 1) defendant had a legitimate business purpose for depositing funds in a different account; 2) Wheaton Bank could have proceeded against Defendant in the state court proceeding; 3) he opines on three statements

(set forth individually) that he believes are not material under the bankruptcy fraud statute; 4) Defendant's failure to disclose his interest in other entities was excusable and inadvertent; 5) that Defendant's statement about the current state of the company was not false; 6) the loss amount supposedly in the Indictment should not be attributed to Wheaton Bank.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provide the legal framework for the admissibility of expert testimony. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine whether it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Rule 702 requires the district court judge to act as a gatekeeper to ensure that admitted expert testimony is relevant, reliable, and has a factual basis. *Id*. at 809; *see also Daubert*, 509 U.S. at 589. The Court is mindful that question of whether the expert is credible or whether his theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

To determine whether expert testimony is admissible, the district court must ascertain (1) whether the expert is qualified, (2) whether his methodology is scientifically reliable, and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). "The

4

proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). *Daubert* sets forth the following non-exhaustive factors for the district court to consider when assessing an expert's methodology: (1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community. *Daubert*, 509 U.S. at 593–94; *see also Bielskis*, 663 F.3d at 893. However, the test for reliability is flexible, and "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 142; *see also United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (noting that the Seventh Circuit "gives the [district] court great latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable"). The *Daubert* principles apply equally to scientific and non-scientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 147–49. Expert testimony may not be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

In addition, the touchstone of admissibility under Rule 702 is helpfulness to the jury. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion. *Id*. "An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful." *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014); *see also Benson*, 941 F.2d at 604 ("[T]he jury does not

need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury.").

## DISCUSSION

The Government moves to bar all of Hasier's opinions as unreliable and irrelevant. In response, Defendant generally argues that Hasier "possesses specialized knowledge which will assist the trier of fact to understand the evidence and also to determine the facts in issue." (Dkt. 76 at 1).

*Reliability*

The reliability analysis focuses on the methodology of the expert. *See Clark v. Takata Corp.*, 192 F.3d 750, 756–57 (7th Cir. 1999). The Government first argues that Hasier's opinions are inadmissible because they are not supported by any reasoning or methodology. The Court agrees.

Defendant, bears the burden of establishing that Hasier's proposed testimony satisfies the *Daubert* standard. Here counsel merely argues that Hasier's extensive expertise is the basis of his methodology. Although an expert's reliance on experience alone does not render his opinion unreliable, *see* 2000 Advisory Committee Notes to Rule 702, both Defendant and Hasier fail to sufficiently explain how Hasier has applied any specific expertise to the facts of this case. Rather, he only offers conclusions without substantiation. *Clark*, 192 F.3d at 757. "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (citation omitted); *see also Zenith Elecs. Corp. v. WH–TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) ("'expert intuition[ ]' is neither normal among social scientists nor testable—and conclusions that are not falsifiable aren't worth much to either science or the judiciary").

Rather than identifying any expertise in a specific area, Hasier instead merely offers his opinion that the allegations in the Indictment fail for various reasons. *See United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support."); *Gen. Elec. Co.*, 522 U.S. at 146. In particular, in formulating his opinions, Hasier does little more than review certain documents and reach a bottom line conclusion that certain allegations in the Indictment do not support criminal charges. Hasier offers no methodology or process to show how he reached his conclusions; instead, he merely gives his personal opinion on the facts.

In *Kokenis*, the district court properly excluded testimony from an accounting expert in a criminal tax trial that the pool of capital theory allowed for "non-recognition for tax purposes in the year of the transaction[.]" *United States v. Kokenis*, 662 F.3d 919 (7th Cir. 2011). That testimony was not reliable because the expert failed to link capital theory to any transactions in the case and could not demonstrate that the defendant had relied on capital theory. Similarly here, Hasier opines that that the transfer of A & K Transport funds in an A & K Specialized Logistics Account had a legitimate business purpose. (Dkt. 72-2 at 2.) Hasier states: "[i]n the context of a troubled loan work-out depositing funds in a different institution than the one a borrower has his loan with is a legitimate strategy[.]" *Id*. But like in *Kokenis*, Hasier does not link the loan work-out to a relevant transaction and does not know whether Defendant relied on that legitimate business purpose in his actions post filing his bankruptcy petition. In considering whether an expert witness's testimony will improperly invade the judge's role as the sole source of the relevant law at a trial, courts and parties must recognize the difference between "stating a legal conclusion" (which is not permitted) and "providing concrete information against which to

measure abstract legal concepts" (which is permitted). *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007); *Bone Care Intern., LLC v. Pentech Pharma., Inc.*, 2010 WL 3928598, at *14 (N.D. Ill. Oct. 1, 2010). Here, no concrete information is being provided to the jury to aid them in making a decision; instead, Hasier is merely telling them what conclusion to make.

His opinion is not based on any expert; instead, it goes directly to the conclusion that the jurors must make themselves—whether the transfer was for a legitimate purpose or to deceive the bankruptcy court. Taking the ultimate decision from the jury is impermissible especially when no basis supports the conclusion. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Expert testimony that an individual did or did not act fraudulently is inadmissible, as the fact finder, not the expert, must determine whether there is sufficient evidence to show that Defendants acted fraudulently. *See Apotex Corp. v. Merck & Co.*, 2006 WL 1155954, at *8 (N.D. Ill. Apr. 25, 2006), *aff'd*, 507 F.3d 1357 (Fed. Cir. 2007) (holding expert testimony inadmissible under Rule 702 where expert report stated that "[i]t is my opinion based on the evidence that [defendant's conduct was] a fraud on the courts"); *Ass'n Ben. Servs., Inc. v. AdvancePCS Holding Corp.*, 2005 WL 2335484, at *4 (N.D. Ill. Sept. 23, 2005) (holding that expert's testimony that defendant committed fraud "extends beyond the permissible scope of expert testimony"). When an expert attempts to impinge on the role of the jury, the testimony should be barred. *United States v. Lupton,* 620 F.3d 790 (7th Cir. 2010) (Proposed expert who was a real estate broker, attorney, professor, author, and former Wisconsin bureaucrat opined on the industry standards of practice for commercial real estate brokers in Wisconsin was properly excluded because it was "tangential to the crucial questions the factfinder had to answer, namely whether the government could prove beyond a reasonable doubt the elements of [the federal offenses with which defendant was charged].") Three of

Hasier's opinions go directly to whether a particular statement is material. The jury will be instructed on materiality and the Court will provide the law to the jury. The meaning of statutes, regulations, and contract terms is "a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); *see also United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) ("Clearly, an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory.").

The key distinction is between "stating a legal conclusion" (which is not permitted) and "providing concrete information against which to measure abstract legal concepts" (which is permitted). *Blount*, 502 F.3d at 680. One way to spot the distinction to examine an expert's terminology. *See e.g., United States v. McIver,* 470 F.3d 550, 562 (4th Cir. 2006); *see also, e.g., United States v. Barile,* 286 F.3d 749, 760 (4th Cir. 2002). If the terms an expert uses have a "separate, distinct and specialized meaning in the law different from that present in the vernacular," the opinion is a legal one and likely impermissible. *McIver,* 470 F.3d at 562 (quoting *Barile,* 286 F.3d at 760); *see also Richman,* 415 F.Supp.2d at 947. Here, Hasier's use of the term "material" in three of his opinions and the term material has "specialized meaning" in the law. *Id.* The terminology is indicative of the impermissible conclusory nature of the statements. It is for the jury and not Hasier to consider the evidence and determine the materiality of any of Defendant's omissions.

Further, an opinion as to whether the Defendant intended to engage in a legitimate business transaction or financial transaction goes directly to Defendant's state of mind. In a criminal case, it is improper to have expert testimony (or any testimony) go to the issue of the Defendant's state of mind because the government must prove beyond a reasonable doubt that

the Defendant intended to commit the acts charged in the Indictment. *United States v. Beavers*, 756 F.3d 1044, 1054–1055 (7th Cir. 2014) (tax expert in criminal case could not rely on or testify to defendant's state-of-mind evidence because "[o]therwise [the defendant] could have gotten highly favorable statements of his without having to face cross-examination."). If Defendant wants the jury to know that did not intend to commit the acts, the only proper way to do so it so take the witness stand and waive his Fifth Amendment right.

Further relating to state of mind evidence, Hasier at one point concludes that the defendant did not make a "false statement." In his sixth opinion he states that, "[i]n addition the statement given in response 'the corporation for which both debtor will dissolve within the month and the debtors will need to seek employment elsewhere' is not a false statement." (Dkt. 72-2 at 4.) This bare conclusion stands alone without reasoning or methodology. Moreover, Hasier is not permitted to testify as to whether this or any other statement is a "false statement," as alleged in his sixth opinion. Whether Defendant misled the Bankruptcy Court by intentionally failing to disclose his interest in MC Express is for the jury to decide, Defendant cannot backdoor his own testimony through the use of the expert by allowing the expert to tell the jury what he truly intended.

Finally, Hasier's ninth opinion includes, in its entirety: "[a]ny loss attributed to the Defendant in the Indictment would be limited to Wheatland Bank and Trust." (Dkt. 72-2 at 4.) The report then goes on to Hasier's signature. There is no reasoning provided for this final conclusion and the statement on its own is unclear. As the Government points out, the Indictment does not allege a loss amount, so it is unclear to what Hasier is referring. Moreover, the Indictment indicates that Wheatland Bank was one of several secured creditors identified in

Defendant's bankruptcy petition that Defendant intended to defraud through his abuse of the bankruptcy process.

## CONCLUSION

For the foregoing reasons, the Government's motion to exclude Haiser's testimony (Dkt. 75) is granted because the testimony would not be helpful to the jury due to it not being based on appropriate methodology, being legal conclusions that are not within the province of the expert; and would be overly prejudicial in that they would only be an avenue for the expert to circumvent Defendant's own testimony by back-dooring into the courtroom Defendant's state of mind. The case remains set for jury trial beginning on October 16, 2017 at 9:15 a.m.

_____
Hon, Virginia M. Kendall
United States District Judge

Date: October 14, 2017